~~RECVD~~ 15 MAY '23 11:37 USDC-ORE
FILED
BD

Preston Berman
2600 Center St. NE
Salem, OR 97301

Eugene Division
Wayne L. Morse U.S. Courthouse
405 East Eighth Ave.
Eugene, OR 97401

May 10th 2023

Dear Judge Mosman,

Please find attached the documentation detailing the process I employed to establish the factual predicate for my habeas corpus claim in case number 6:23-cv-660-MO. The foundation of my argument was derived from a series of interactions with an AI-powered chatbot, ChatGPT, in late April 2023. In these conversations, I submitted prompts (indicated in blue) to the chatbot, which subsequently generated responses (indicated in yellow) that informed and contributed to the development of my legal argument in the habeas corpus petition.

RECVD 15 MAY '23 11:37 USDC-ORE
Filed

ORS 161.385 Psychiatric Security Review Board composition, term, qualifications, compensation, appointment, confirmation and meetings TEXT ANNOTATIONS 2 (1)There is hereby created a Psychiatric Security Review Board consisting of 10 members appointed by the Governor and subject to confirmation by the Senate under section 4, Article III of the Oregon Constitution. (2)The membership of the board may not include any district attorney, deputy district attorney or public defender. The Governor shall appoint: (a)A psychiatrist experienced in the criminal justice system and not otherwise employed on a full-time basis by the Oregon Health Authority or a community mental health program; (b)A licensed psychologist experienced in the criminal justice system and not otherwise employed on a full-time basis by the authority or a community mental health program; (c)A member with substantial experience in the processes of parole and probation; (d)A lawyer with substantial experience in criminal trial practice; (e)A psychiatrist certified, or eligible to be certified, by the Oregon Medical Board in child psychiatry who is experienced in the juvenile justice system and not employed on a full-time basis by the authority or a community mental health program; (f)A licensed psychologist who is experienced in child psychology and the juvenile justice system and not employed on a full-time basis by the authority or a community mental health program; (g)A member with substantial experience in the processes of juvenile parole and probation; (h)A lawyer with substantial experience in juvenile law practice; and (i)Two members of the general public. (3)The term of office of each member is four years. The Governor at any time may remove any member for inefficiency, neglect of duty or malfeasance in office. Before the expiration of the term of a member, the Governor shall appoint a successor whose term begins on July 1 next following. A member is eligible for reappointment. If there is a vacancy for any cause, the Governor shall make an appointment to become immediately effective for the unexpired term. (4)A member of the board not otherwise employed full-time by the state shall be paid on a per diem basis an amount equal to $289.22, adjusted according to the executive pay plan for the biennium, for each day during which the member is engaged in the performance of official duties, including necessary travel time. In addition, subject to ORS 292.220 (Department to regulate subsistence and mileage allowances for travel) to 292.250 (Reimbursement for use of privately owned motor vehicle on official business) regulating travel and other expenses of state officers and employees, the member shall be reimbursed for actual and necessary travel and other expenses incurred in the performance of official duties. (5)Subject to any applicable provision of the State Personnel Relations Law, the board may hire employees to aid it in performing its duties. (6)The board consists of two five-member panels. The adult panel is responsible for persons placed under the board's jurisdiction under ORS 161.315 (Right of state to obtain mental examination of defendant) to 161.351 (Discharge by board) and 419C.544 (Transfer of cases from juvenile panel to adult panel of Psychiatric Security Review Board) and consists of those members appointed under subsection (2)(a) to (d) of this section and one of the public members. The juvenile panel is responsible for young persons placed under the board's jurisdiction under ORS 419C.529 (Finding of serious mental condition) and consists of those members appointed under subsection (2)(e) to (h) of this section and the other public member. (7)(a) Each panel shall select one of its members as chairperson to serve for a one-year term with such duties and powers as the panel determines. (b)A majority of the voting members of a panel constitutes a quorum for the transaction of business of the panel. (8)Each panel shall meet at least twice every month, unless the chairperson determines that there is not sufficient business before the panel to warrant a meeting at the scheduled time. The panel shall also meet at other times and places specified by the call of the chairperson or of a majority of the members of the panel. [1977 c.380 §8; 1979 c.867 §7; 1979 c.885 §6; 1981 c.711 §15; 1981 s.s. c.3 §132; 1983 c.740 §26; 1983 c.800 §12; 1987 c.133 §1; 2001 c.962 §70; 2005 c.843 §20; 2009 c.595 §109; 2011 c.708 §8]

ORS 161.385 establishes the Psychiatric Security Review Board in Oregon. The board consists of 10 members appointed by the Governor and confirmed by the Senate. It excludes district attorneys, deputy district attorneys, and public defenders. The board is made up of professionals from various fields, such as psychiatrists, psychologists, lawyers, and members with experience in parole and probation processes. The term of office for each member is four years, with the possibility of reappointment. Board members not employed full-time by the state receive a per diem payment for their service.

The board is divided into two five-member panels: the adult panel and the juvenile panel. Each panel has a different area of responsibility, with the adult panel overseeing cases related to adult mental health and the juvenile panel handling cases involving young individuals. The panels meet at least twice every month, or more if needed, and each panel selects a chairperson for a one-year term. A quorum for a panel consists of a majority of the voting members.

ORS 161.327 Commitment or conditional release of person found guilty except for insanity of felony consultation evaluation appeal rules TEXT ANNOTATIONS 10 (1)After the defendant is found guilty except for insanity pursuant to ORS 161.319 (Form of verdict on guilty except for insanity), if the court finds by a preponderance of the evidence that a person found guilty except for insanity of a felony is affected by a qualifying mental disorder and presents a substantial danger to others, the court shall order as follows: (a)If the court finds that the person is not a proper subject for conditional release, the court shall order the person committed to a state hospital or, if the person is under 18 years of age, to a secure intensive community inpatient facility for custody, care and treatment. When the court orders a person committed under this paragraph, the court shall place the person under the jurisdiction of the Psychiatric Security Review Board. (b)If the court finds that the person can be adequately controlled with supervision and treatment if conditionally released and that necessary supervision and treatment are available, the court shall order the person conditionally released. (2)(a) If a party intends to request conditional release under this section, the party shall, as soon as practicable, notify the opposing party, the court and the board of the request. The party requesting conditional release shall make every effort to provide the notification in a manner that allows sufficient time to carry out the provisions described in this subsection before the court determination on conditional release. (b)Upon receipt of a request for conditional release under this section: (A)If the most serious offense in the charging instrument is a Class C felony, the court shall order that a local mental health program designated by the board consult with the person to determine whether the necessary supervision and treatment for the person are available in the community and appropriate for the person and shall order the release of any records to the program director that are necessary to complete the consultation. (B)If the most serious offense in the charging instrument is a Class A or Class B felony, the court may order that a local mental health program designated by the board consult with the person to determine whether the necessary supervision and treatment for the person are available in the community and appropriate for the person. If the court orders the consultation, the court shall further order the release of any records to the program director that are necessary to complete the consultation. (3)(a) If the outcome of a consultation described in subsection (2)(b) of this section indicates that the necessary supervision and treatment are available in the community and appropriate for the person, the local mental health program shall evaluate the person to determine whether the person can be adequately controlled with supervision and treatment if conditionally released, and the program director shall provide to the court and to the board a report of the findings resulting from the consultation, a report of the findings resulting from the evaluation and recommendations for treatment. (b)If the outcome of a consultation described in subsection (2)(b) of this section indicates that the necessary supervision and treatment for the person are not available in the community or not appropriate for the person, the program director shall submit to the court and to the board a report of the findings resulting from the consultation and may include any recommendations for treatment. (4)In determining whether a person should be conditionally released, the court: (a)May order evaluations and examinations as provided in ORS 161.336 (Conditional release by board) (3) and 161.346 (Hearings on discharge, conditional release, commitment or modification) (2) or as otherwise needed by the court; (b)Shall act in conformance with

subsection (2)(b) of this section concerning an order for a local mental health program designated by the board to consult with the person; (c)Shall have as its primary concern the protection of society; and (d)May not order conditional release without a report from the consultation described in subsection (2)(b) of this section and the evaluation described in subsection (3)(b) of this section. (5)When a person is conditionally released under this section, the person is subject to those supervisory orders of the court as are in the best interests of justice, the protection of society and the welfare of the person. The court shall designate a person or state, county or local agency to supervise the person upon release, subject to those conditions as the court directs in the order for conditional release. Prior to the designation, the court shall notify the person or agency to whom conditional release is contemplated and provide the person or agency an opportunity to be heard before the court. After receiving an order entered under subsection (1)(b) of this section, the person or agency designated shall assume supervision of the person pursuant to the direction of the board. The person or agency designated as supervisor shall be required to report in writing no less than once per month to the board concerning the supervised person's compliance with the conditions of release. (6)Upon placing a person on conditional release, the court shall within one judicial day provide to the board an electronic copy of the conditional release order. The court shall additionally notify the board in writing of the supervisor appointed and all other conditions of release, and the person shall be on conditional release pending hearing before the board. Upon compliance with this section, the court's jurisdiction over the person is terminated. (7)The total period of commitment or conditional release under ORS 161.315 (Right of state to obtain mental examination of defendant) to 161.351 (Discharge by board) may not exceed the maximum sentence provided by statute for the crime for which the person was found guilty except for insanity. (8)An order of the court under this section is a final order appealable by the person found guilty except for insanity in accordance with ORS 19.205 (Appealable judgments and orders) (5). Notwithstanding ORS 19.255 (Time for service and filing of notice of appeal), notice of an appeal under this section shall be served and filed within 90 days after the order appealed from is entered in the register. The person shall be entitled on appeal to suitable counsel possessing skills and experience commensurate with the nature and complexity of the case. If the person is financially eligible, suitable counsel shall be appointed in the manner provided in ORS 138.500 (Appointment of counsel and furnishing of transcript for appellant without funds) (1), and the compensation for counsel and costs and expenses of the person necessary to the appeal shall be determined and paid as provided in ORS 138.500 (Appointment of counsel and furnishing of transcript for appellant without funds). (9)Following the order described in subsection (1) of this section, the court shall notify the person of the right to appeal and the right to a hearing before the board in accordance with ORS 161.336 (Conditional release by board) (5) and 161.341 (Application for discharge or conditional release) (3). (10)The board shall hold a review hearing within 90 days for a person conditionally released under this section. (11)The board shall establish by rule standards for the consultations described in subsection (2)(b) of this section and the evaluations described in subsection (3)(a) of this section. [1979 c.867 §5; 1979 c.885 §2; 1981 c.711 §2; 1981 s.s. c.3 §129; 1983 c.800 §6; 1989 c.790 §48; 1995 c.208 §1; 2001 c.962 §89; 2003 c.576 §§578,579; 2005 c.685 §§1,1a; 2009 c.595 §102; 2011 c.708 §36; 2011 c.724 §3; 2013 c.1 §9; 2017 c.442 §12; 2017 c.634 §7; 2019 c.329 §3; 2021 c.483 §1]

ORS 161.327 outlines the process for the commitment or conditional release of a person found guilty except for insanity of a felony in Oregon. If the court finds that the person has a qualifying mental disorder and poses a substantial danger to others, it will either order the person to be committed to a state hospital or a secure intensive community inpatient facility (if under 18) or conditionally released if the person can be adequately controlled with supervision and treatment.

When a party requests conditional release, they must notify the opposing party, the court, and the Psychiatric Security Review Board. The court may order a local mental health program designated by the board to consult with the person to determine if the necessary supervision and treatment are available in the community and appropriate for the person. The program director will submit a report to the court and the board regarding the findings of the consultation.

In determining whether a person should be conditionally released, the court may order evaluations and examinations, follow the provisions regarding consultation with a local mental health program, prioritize the protection of society, and require a report from the consultation and evaluation before granting conditional release.

When a person is conditionally released, they are subject to supervisory orders of the court, and a designated person or agency will supervise the individual. The total period of commitment or conditional release cannot exceed the maximum sentence for the crime for which the person was found guilty except for insanity.

The person has the right to appeal the court's order, with a 90-day window to serve and file a notice of appeal. The person is also entitled to suitable counsel on appeal. Following the court's order, the person must be notified of their right to appeal and the right to a hearing before the Psychiatric Security Review Board. The board will hold a review hearing within 90 days for a person conditionally released under this section.

ORS 161.329 Order of discharge TEXT ANNOTATIONS 2 After the defendant is found guilty except for insanity pursuant to ORS 161.319 (Form of verdict on guilty except for insanity), the court shall order that the person be discharged from custody if: (1)The court finds that the person is no longer affected by a qualifying mental disorder, or, if so affected, no longer presents a substantial danger to others and is not in need of care, supervision or treatment; or (2)(a) Each offense for which the person is found guilty except for insanity is a misdemeanor; and (b)The court finds that the person does not present a substantial danger to others that requires commitment. [1971 c.743 §45; 1977 c.380 §6; 1981 c.711 §4; 2011 c.724 §5; 2017 c.634 §9; 2019 c.329 §5]

ORS 161.329 outlines the conditions under which a person found guilty except for insanity can be discharged from custody in Oregon. The court shall order the person's discharge if:

1. The court finds that the person is no longer affected by a qualifying mental disorder, or if they are still affected, they no longer present a substantial danger to others and do not need care, supervision, or treatment.
2. The person is found guilty except for insanity for misdemeanor offenses only, and the court finds that the person does not present a substantial danger to others that requires commitment.

will you write a paper about how giving the maximum sentence to people with a mental disability is discrimination while non disabled people dont recieve the maximum

Title: Discrimination in Sentencing: The Impact of Maximum Sentences on Individuals with Mental Disabilities

Abstract: This paper explores the issue of discrimination in the criminal justice system regarding the sentencing of individuals with mental disabilities. Specifically, it examines the disparity between maximum sentences given to individuals with mental disabilities and the generally lesser sentences given to non-disabled individuals for the same crimes. The paper argues that this disparity constitutes discrimination against individuals with mental disabilities and proposes policy changes to ensure equal treatment and justice for all.

Introduction: In recent years, concerns about the fair and equitable treatment of individuals with mental disabilities within the criminal justice system have grown. One key area of concern is the disparity in sentencing between individuals with mental disabilities and those without such disabilities. A common pattern emerges where individuals with mental disabilities often receive maximum sentences for their crimes, while their non-disabled counterparts typically receive more lenient sentences. This paper aims to examine the factors contributing to this disparity and argue that it represents a form of discrimination against individuals with mental disabilities.

I. The Disparity in Sentencing A. Overview of the issue B. Factors contributing to maximum sentences for individuals with mental disabilities

1. Stigma and misunderstanding of mental disabilities
2. Concerns about public safety
3. Lack of adequate mental health care and support within the criminal justice system

II. Discrimination Against Individuals with Mental Disabilities A. Definition of discrimination B. Legal standards and protections

1. The Americans with Disabilities Act (ADA)
2. The Eighth Amendment to the U.S. Constitution
3. International human rights law C. The discriminatory nature of maximum sentences for individuals with mental disabilities
4. Disparate impact
5. Failure to provide reasonable accommodations
6. Violation of the right to equal protection under the law

III. Policy Recommendations for Addressing the Disparity A. Increased awareness and education on mental disabilities for criminal justice professionals B. Improved mental health care and support within the criminal justice system C. Alternatives to maximum sentences for individuals with mental disabilities

1. Diversion programs
2. Treatment-focused sentencing
3. Parole and probation options

Conclusion: The disparity in sentencing between individuals with mental disabilities and those without such disabilities constitutes discrimination and undermines the principles of fairness and justice. By addressing the factors contributing to this disparity and implementing policy changes, the criminal justice system can ensure that individuals with mental disabilities are treated equitably and humanely. Ultimately, this will promote a more just and inclusive society for all.

Effect of a Guilty Except for Insanity Plea Initial Placement When an adult commits a felony and is found by the courts to be Guilty Except for Insanity (GEI), the judge places the individual under the jurisdiction of the Oregon Psychiatric Security Review Board (PSRB). Following the passage of Senate Bill 65 as of July 1, 2018, all individuals found GEI are placed under the PSRB's jurisdiction. Typically, individuals found GEI are placed under the Board's jurisdiction for the maximum period for which they could have been sentenced if found guilty of the crime. Sentencing guidelines do not apply to GEI.

Effect of a Guilty Except for Insanity Plea

I. Introduction The Guilty Except for Insanity (GEI) plea is a legal option available to individuals charged with a crime who were affected by a mental disorder at the time of the offense. This plea acknowledges that the individual committed the act but was unable to understand the nature of their actions or distinguish right from wrong due to their mental condition. The following sections will discuss the initial placement and jurisdiction of the Oregon Psychiatric Security Review Board (PSRB) in cases where an individual is found GEI.

II. Initial Placement A. Oregon Psychiatric Security Review Board (PSRB)

1. Jurisdiction and role of the PSRB
2. Senate Bill 65 and its impact on GEI cases

B. Sentencing Guidelines and GEI

1. Maximum sentence duration
2. Comparison to traditional sentencing guidelines

III. Implications of GEI Plea A. Treatment and Supervision

1. Mental health treatment
2. Potential for conditional release

B. Stigma and Public Perception

1. Misconceptions about GEI individuals
2. Challenges in reintegration into society

C. Legal Rights and Protections

1. Right to a fair trial
2. Right to appeal
3. Right to periodic review of placement

Conclusion: The Guilty Except for Insanity (GEI) plea is a complex legal option that affects individuals with mental disorders who commit crimes. The Oregon Psychiatric Security Review Board (PSRB) plays a significant role in the supervision and treatment of these individuals. While the GEI plea aims to provide appropriate mental health care for those in need, it also raises questions about fairness in sentencing and the long-term implications for individuals found GEI. Understanding the nuances of the GEI plea and the role of the PSRB is essential for ensuring a fair and just criminal justice system.

people with mental condition's are mentally disabled under federal law. write a paper explaining that giving the maximum sentence to only the mentally disabled is illegal discrimination under the constitution

ChatGPT

Title: Discrimination in Sentencing for Mentally Disabled Individuals: A Constitutional Analysis

I. Introduction The sentencing of mentally disabled individuals in the United States criminal justice system raises questions about the fairness and legality of the process. Under federal law, people with mental conditions are considered mentally disabled, and therefore, are entitled to protections against discrimination. This paper will examine the constitutionality of giving maximum sentences to mentally disabled individuals who are found Guilty Except for Insanity (GEI) and whether this practice constitutes illegal discrimination.

II. Background A. Mental Disability and Federal Law

1. Definition and classifications of mental disability
2. Legal protections for mentally disabled individuals

B. Guilty Except for Insanity (GEI) Plea

1. Role and purpose of the GEI plea
2. Implications for sentencing and treatment

III. Constitutional Analysis A. Equal Protection Clause

1. The Fourteenth Amendment and the protection of vulnerable groups
2. Analysis of the Equal Protection Clause in the context of mentally disabled individuals and sentencing

B. Cruel and Unusual Punishment

1. The Eighth Amendment and the prohibition of cruel and unusual punishment
2. Evaluation of maximum sentences for mentally disabled individuals under the Eighth Amendment

C. Due Process Clause

1. The Fourteenth Amendment and the guarantee of due process
2. Assessment of the GEI plea and maximum sentences in the context of due process

IV. Legal Precedents and Case Studies A. Relevant Supreme Court Decisions

1. Analysis of key Supreme Court cases on mental disability and sentencing
2. Application of legal precedents to maximum sentences for mentally disabled individuals

B. Lower Court Cases and State Laws

1. Examination of lower court decisions and state laws regarding sentencing and mental disability
2. Comparison of state approaches to the issue

V. Alternative Approaches and Recommendations A. Sentencing Reforms

1. Proportional sentencing for mentally disabled individuals
2. Individualized assessments and consideration of mitigating factors

B. Increased Focus on Treatment and Rehabilitation

1. The role of mental health treatment in the criminal justice system
2. Potential benefits of rehabilitative approaches for mentally disabled individuals

Conclusion: The issue of maximum sentences for mentally disabled individuals found Guilty Except for Insanity (GEI) raises concerns about discrimination and constitutionality. By analyzing the relevant constitutional provisions, legal precedents, and alternative approaches, it becomes evident that the current practice may violate the rights of mentally disabled individuals. To ensure fairness and justice, it is crucial to reevaluate the sentencing process for this vulnerable population and consider reforms that prioritize treatment and rehabilitation.

what parts of the constitution does the maximum sentencing violate

While I am an AI language model and not a legal expert, it appears that the potential constitutional issues with the maximum sentencing policy for individuals with mental disabilities might involve the following constitutional provisions and principles:

1. Equal Protection Clause (14th Amendment): This clause requires that states provide equal protection under the law to all individuals within their jurisdiction. If the maximum sentencing policy treats mentally disabled individuals differently from non-disabled individuals without a valid reason, it may be considered a violation of the Equal Protection Clause.
2. Due Process Clause (5th and 14th Amendments): The Due Process Clause prohibits the government from depriving individuals of their life, liberty, or property without due process of law. If the maximum sentencing policy for mentally disabled individuals is found to be arbitrary or lacking in procedural safeguards, it might be challenged on the grounds of violating the Due Process Clause.
3. Cruel and Unusual Punishment Clause (8th Amendment): This clause prohibits the government from imposing cruel and unusual punishments. If the maximum sentencing policy results in disproportionately harsh sentences for mentally disabled individuals compared to non-disabled individuals, it might be argued that such a policy constitutes cruel and unusual punishment.

Please note that this analysis is not exhaustive, and the specific arguments that could be raised in a lawsuit would depend on the facts of the case and the applicable law. It is advisable to consult with an attorney who can provide tailored legal advice for your specific situation.

GROUND THREE:

Ground Three: Violation of the Right to Effective Assistance of Counsel

Supporting FACTS (state briefly without citing cases or law): The state's policy of automatically imposing maximum sentences on individuals with mental disabilities who are found guilty except for insanity (GEI) interferes with the ability of defense attorneys to effectively represent their clients. This policy does not allow attorneys to present individualized mitigating factors or circumstances that could lead to a more lenient sentence for their clients with mental disabilities, which undermines the right to effective assistance of counsel as guaranteed by the Sixth Amendment to the U.S. Constitution.